IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRACY J.,[1] | ) |
| Plaintiff, | ) ) ) |
|  | ) No. 20 C 6929 |
| v. | ) ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) Maria Valdez ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Tracy J.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 18] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On May 25, 2018, Plaintiff filed a claim for DIB, alleging disability since July 1, 2012. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 28, 2020. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified. At the hearing, Plaintiff amended her alleged onset date to October 8, 2015.

On March 20, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of October 8, 2015 through her date last insured of December 31, 2016. At step two, the ALJ concluded that Plaintiff had a severe impairment of depression. The ALJ

2

concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following additional limitations: she can perform simple, routine, and repetitive work. At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a secretary. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former

3

occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and

means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately

5

articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ improperly rejected the medical opinion evidence; (2) the ALJ erred by failing to characterize Plaintiff's obesity as severe and otherwise failed to accommodate the functional limitations caused by her obesity; (3) the ALJ's RFC assessment fails to accommodate the limitations caused by Plaintiff's diabetes mellitus; and (4) the ALJ improperly relied on the VE's testimony regarding job numbers. Each argument will be addressed below in turn.

### A. The ALJ's Assessment of the Medical Opinion Evidence

Plaintiff asserts that the ALJ improperly discounted the opinions of his treating medical professionals. Because Plaintiff filed her claim in 2018, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under this regulation, the ALJ "will not defer or give any specific evidentiary weight, including

6

controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ considered a statement dated February 4, 2020 from Dr. Anjum Khatoon, Plaintiff's psychiatrist, and Nancy Meyers, Plaintiff's therapist. The ALJ noted their opinions that there had been partial improvement in Plaintiff's more severe mental health symptoms but Plaintiff "struggled with depression[] since she was laid off in 2010" and "side effects from medications . . . are enough to interfere with [Plaintiff's] ability to perform normal, day to day functions and her ability to seek or maintain gainful employment." (R. 22.) The ALJ found the

7

February 4, 2020 statement somewhat persuasive. The ALJ reasoned that the medical professionals' opinions were not supported because "the record and testimony clearly shows that the claimant was laid off from her last employment because the company closed and not because of her mental impairments." (*Id.*) The ALJ further reasoned that "their opinion that side effects from the claimant's medications to treat her medication condition would interfere with her ability to seek or maintain employment and in her daily functioning . . . is not consistent with the medical record of evidence." (*Id.*) Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting the February 4, 2020 statement. *See* 20 C.F.R. § 404.1520c(b)(2).

The ALJ also considered the mental residual functional capacity statement by Dr. Khatoon dated February 5, 2020. The ALJ noted Dr. Khatoon's opinions that Plaintiff would be unable to perform mental work activities for 10-15% or more of an 8-hour workday, would be off task more than 30% during an 8-hour workday, and would likely be absent for more than 6 days per month due to her impairments and/or treatment. The ALJ found these opinions unpersuasive, reasoning that "such extreme limitations are not supported by Dr. Khatoon's own treatment records." (R. 22.) The ALJ further reasoned that the opinions were inconsistent with Plaintiff's "overall mental status examination findings [which] were within normal limits." (*Id.*) Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Dr. Khatoon's rather extreme opinions. *See* 20 C.F.R. § 404.1520c(b)(2).

8

Plaintiff argues at length that "Dr. Khatoon's opinions are supportable and consistent with the record as a whole." (Pl.'s Memo. At 6.) The Court finds that Plaintiff's contentions in that regard amount to an invitation for the Court to reweigh the evidence, which it cannot do. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.") (citations omitted). The Court also rejects Plaintiff's assertion that the ALJ was impermissibly "playing doctor" by considering and weighing the evidence in relation to the disputed medical opinions. *See Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 886-87 (N.D. Ill. 2003) ("Our review of the record indicates that the ALJ was not 'playing doctor,' but performing his duty to consider and weigh the evidence.").

Finally, Plaintiff takes issue with the ALJ's evaluation of Plaintiff's GAF (Global Assessment Functioning) scores. The ALJ found the GAF scores unpersuasive, reasoning as follows:

> With respect to the question of the GAF scores, which may be considered a form of opinion, I generally do[] not find a specific GAF score to be persuasive over other, more convincing evidence. The GAF score represents a particular clinician's subjective evaluation at a single point in time. The GAF score may vary from day to day, from time to time, and between practitioners. Further, a GAF rating may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further explanation, the rating does not evidence an impairment seriously interfering with a claimant's ability to work. Finally, the GAF score is not designed for adjudicative determinations. Other evidence may outweigh GAF scores, and in this case, the other evidence is more informative and more persuasive, as described above.

9

(R. 22.) So, the ALJ gave multiple reasons for why he did not believe the GAF scores were persuasive in this case, including that they were eclipsed by other record evidence. The Court finds that the ALJ's treatment of the GAF scores was not erroneous and is consistent with Seventh Circuit precedent. *See Smith v. Kijakazi*, No. 21-CV-1276, 2022 WL 2791515, at *6 (N.D. Ill. July 15, 2022) ("The ALJ's consideration of plaintiff's GAF score is consistent with Seventh Circuit precedent. The Seventh Circuit, too, has described these scores as a 'snapshot.' . . . The Seventh Circuit has also explained that a GAF score is 'useful for planning treatment' but 'does not reflect the clinician's opinion of functional capacity.' . . . The ALJ did not err in finding the GAF scores not to be persuasive or determinative of plaintiff's residual functional capacity.") (citations omitted); *Spring W. v. Saul*, No. 20 C 1864, 2021 WL 2529615, at *4 (N.D. Ill. June 21, 2021) ("Although Spring would have preferred for the ALJ to give greater weight to the GAF score, the ALJ did not do so. It is not for this Court to reweigh the evidence."); *Colleen M. v. Saul*, No. 19 C 1287, 2021 WL 822934, at *8 (N.D. Ill. Mar. 4, 2021) ("[T]he regulations and case law do not require an ALJ to make a disability determination based solely on a claimant's GAF score.").

### B. <u>Plaintiff's Obesity</u>

Plaintiff argues that the ALJ's assessment of her obesity was deficient. In finding Plaintiff's obesity to be a nonsevere impairment, the ALJ noted that Plaintiff's "BMI continued to be over 50 during the relevant period" but reasoned that "physical examination findings were within normal limits throughout the date

last insured." (R. 16.) The ALJ further reasoned that "there is no evidence that [Plaintiff's obesity] significantly impairs her external function and non-exertional functions." (*Id.*) Finally, the ALJ explained that "there is no evidence that the claimant's obesity has caused significant impairments related to the claimant's other functions, such as cardiovascular, respiratory, or digestive, that causes reoccurring, persistent, and uncontrollable effects on these functions." (*Id.*) As an initial matter, Plaintiff challenges the ALJ's obesity analysis as "boilerplate." The Court finds that the ALJ's assessment goes beyond boilerplate terms in specifically considering the lack of evidence supporting any complications caused by obesity, including the normal physical examinations. *See Yvonne K.C. v. Kijakazi*, No. 20 C 1147, 2022 WL 1104506, at *7 (N.D. Ill. Apr. 13, 2022) ("[P]hysical examinations were routinely normal. Plaintiff does not address those normal exams or explain how they demonstrate that she has severe limitations attributable to her morbid obesity.").

Plaintiff challenges the ALJ's obesity analysis by broadly asserting that her "morbid obesity with knee and hip pain . . . makes sustaining work on a full-time basis an impossibility for Plaintiff" and "heavy work would be impossible for Plaintiff." (Pl.'s Memo. at 9-10.) The problem for Plaintiff is that she does not specifically explain, beyond generalizations, how her obesity impacts her other alleged physical impairments. As Defendant points out, "a diagnosis is not a disability." *Tracie H. v. Saul*, 388 F. Supp. 3d 990, 995 (N.D. Ill. 2019) (citations omitted). Along those lines, a claimant's challenge to the ALJ's assessment of her

11

obesity fails where the claimant "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ." *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015). The claimant must "explain how her obesity exacerbated her underlying impairments." *Id.* Here, Plaintiff fails to cite to any meaningful evidence in the record and does not sufficiently explain how her obesity exacerbated her other impairments. As argued by Defendant, Plaintiff does not point to any treatment records other than the BMI itself that would support finding that she had physical functional limitations caused by obesity. Ultimately, the Court finds Plaintiff's arguments concerning obesity to be unavailing. *See Tanitria C. v. Saul*, No. 19 CV 1884, 2021 WL 1577795, at *9 (N.D. Ill. Apr. 22, 2021) ("Given that the ALJ expressly considered Claimant's obesity in connection with her other impairments and complaints, Claimant's argument that the ALJ failed to properly account for her obesity lacks merit. Notably, other than general speculations that morbid obesity can, of course, interact with other impairments to limit physical functions, Claimant has failed to cite to any record evidence showing how her obesity specifically limits her ability to perform work related activities to a greater degree than the ALJ recognized.").

### C. Plaintiff's Diabetes

Plaintiff argues that the ALJ's decision did not sufficiently account for her diagnosed diabetes mellitus. The ALJ assessed Plaintiff's diabetes as follows:

> As to her diabetes mellitus, the claimant reported noncompliance with medication treatment in January and April 2016. Her diabetes was noted as uncontrolled. In September 2016, the claimant's condition was assessed as not at goal but without complication and with long-term

> current use of insulin. Physical examination findings including neurological, were within normal limits. The claimant testified that her diabetes was not controlled because she does not test her blood sugar levels and does not follow diet recommendations.

(R. 16 (citations omitted).) The ALJ further reasoned:

> The medical records submitted after the date last insured show the claimant re-established care for her diabetes mellitus in January 2019. She reported she was noncompliant with medication and had not been checking her sugars at home. Nonetheless, physical examination findings were within normal limits. Her diabetic foot exam was normal. Four months later, her diabetes was described as without complications with long-term use of insulin. Treatment notes indicated that she still was not checking her sugars and not taking her insulin twice a day as prescribed. Yet her physical examination was normal and unremarkable. In August and December 2019, her diabetes continued to be uncontrolled with the claimant acknowledging she was not taking her insulin as prescribed because she had been back and forth to Peoria to care for her father. Yet, physical examination findings were normal and unremarkable. Nonetheless, there is no evidence of complications or end organ damage because of this condition.

(*Id.* (citations omitted).) So, the ALJ provided a fulsome analysis of Plaintiff's diabetes. The ALJ reasoned that, though Plaintiff's diabetes was termed "uncontrolled," her diabetes was determined to be without complication and Plaintiff's physical examination findings (including of Plaintiff's foot) were within normal limits both before and after the date last insured.

Plaintiff asserts that she has a "lack of energy" due to her diabetes and "has chronic numbness in her feet and has been diagnosed with diabetes mellitus." (Pl.'s Memo. at 11.) Along those lines, Plaintiff contends that the ALJ failed to adequately account for her fatigue and diabetic neuropathy. However, as Defendant points out, Plaintiff's treatment records do not document a single complaint of fatigue or numbness to Plaintiff's treatment providers during the period at issue (from

13

October 8, 2015 to December 31, 2016). Plaintiff's treatment records document a report of fatigue in March 2012 and a complaint of feeling tired and not getting enough sleep in November 2013, well prior to her October 2015 alleged onset date, but none after. (R. 284, 755.) In fact, Plaintiff denied fatigue at her December 2016 examination and after her date last insured in April and August 2017, November 2019, and January 2020. (*Id.* at 358, 370, 374, 978, 1002.) Similarly, Plaintiff's examinations document a single observation of abnormal sensation in both feet at her August 2018 examination, nearly two years after her date last insured. (*Id.* at 400.) Plaintiff's treatment records document normal foot examinations, including normal results in sensation testing, in June 2015 and January 2016. (*Id.* at 316, 334.) In fact, the diagnoses Plaintiff points to in her brief as evidence of peripheral neuropathy are dated well after the date last insured. (Pl.'s Memo. at 11, citing R. 397, 414, 422.) Given the lack of evidence, the Court finds that the ALJ did not err vis-à-vis Plaintiff's diabetes and/or her allegedly related fatigue and foot neuropathy. Finally, though Plaintiff argues that the ALJ did not sufficiently consider her impairments together in combination, the Court finds that that assertion amounts to a request that the evidence be re-weighed. *See Cindy P. v. Kijakazi*, No. 20 C 6708, 2022 WL 2802328, at *4 (N.D. Ill. July 18, 2022) ("While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, the Court agrees with Defendant that Plaintiff's contention in that regard amounts to an invitation for the Court to reweigh the evidence.").

### D. The VE's Testimony Regarding Job Numbers

For his final argument, Plaintiff contends that the VE's job numbers are suspect because he utilized the SkillTRAN computer program to derive them. According to Plaintiff, "[t]he ALJ committed reversible error by relying on the VE's testimony that relied on SkillTRAN without any evidence of SkillTRAN's reliability." (Pl.'s Memo. at 13.) However, "Seventh Circuit opinions . . . have on numerous occasions reinforced that a claimant who fails to question or raise an objection to the VE's testimony during the hearing forfeits that objection on appeal." *Tina I. v. Kijakazi*, No. 3:20-cv-50327, 2022 U.S. Dist. LEXIS 3454, at *5 (N.D. Ill. Jan. 7, 2022) (citations omitted). Here, while Plaintiff's counsel briefly questioned the VE regarding his derivation of job numbers (R. 60), Plaintiff's counsel did not actually raise any specific objections to the VE's use of SkillTRAN, either at the hearing or thereafter. Accordingly, Plaintiff has forfeited any objection or claimed deficiency with respect to the VE's job numbers and the ALJ's reliance thereon. *See Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) ("Brown also forfeited her argument regarding the vocational expert's testimony . . . by failing to object during the hearing.") (citation omitted); *Coyier v. Saul*, 860 F. App'x 426, 427-28 (7th Cir. 2021) ("Coyier waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates or to submit a supplemental brief. . . . These omissions effectively conceded the reliability of the VE's job numbers.") (citations omitted).[3]

---

[3] On the topic of waiver, in her opening memorandum, Plaintiff makes one passing reference to concentration, persistence, and pace, without advancing any argument on the

15

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary judgment [Doc. No. 18] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is granted.

**SO ORDERED.**            **ENTERED:**

*[signature: Maria Valdez]*

**DATE:**   **August 12, 2022**

                                                 **HON. MARIA VALDEZ**
                                                 **United States Magistrate Judge**

---

subject. (Pl.'s Memo. at 12.) For the first time in her reply brief, Plaintiff argues that limiting Plaintiff to simple, routine, and repetitive work does not "accommodate[] Plaintiff's moderate restriction in Concentration, Persistence and Pace." (Pl.'s Reply at 4.) Plaintiff's argument in that regard has been waived. *See Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are deemed waived.") (citation omitted).